IRVING, J.,
for the Court.
¶ 1. On January 28, 2002, Sherman V. Johnson filed a medical malpractice action, by and through his mother .Lubertha Johnson, against Dr. Donald J. Blackwood, Bolivar Medical Center (formerly Bolivar County Hospital (BCH)), and several other defendants, alleging damages due to negligent medical care rendered by the defendants.[1] Sherman further alleged damages due to the “negligent loss or destruction” of his medical records and breach of contract. Additionally, Sherman alleged that he was entitled to recover under the theory of res ipsa loquitur. The complaint was subsequently amended to add Family Medical Clinic of Cleveland, Ltd. (FMCCL), now Family Medical Clinic, and Dr. Mert Toler as defendants.
¶ 2. In response, Dr. Blackwood and his codefendants filed summary judgment motions, alleging that Sherman’s suit was barred by the applicable statute of limitations. Shortly thereafter, the trial judge entered orders granting the defendants’ motions and dismissing Sherman’s claim. Aggrieved, Sherman now appeals the trial judge’s grant of summary judgment in favor of the defendants.
*1055 ¶ 3. We find no reversible error; therefore, we affirm the trial court’s grant of summary judgment.
FACTS
¶ 4. Sherman Johnson was born a healthy infant on November 7, 1983. After his birth, Sherman periodically received medical care from Dr. Blackwood and Dr. Toler at the Family Medical Clinic in Cleveland, Mississippi. The facts which led to this lawsuit began when Sherman was eight months old. Sherman alleged in his complaint that:
[o]n July 5, 1984, [Sherman] Johnson presented to Dr. Toler at FMCCL with a history of “head cold,” blisters on his feet from rubbing his feet together, an elevated temperature, and vomiting. Dr. Toler’s examination revealed left oti-tis media. Dr. Toler indicated that the neck had increased muscle tone, but there was no follow-up of this examination.
Sherman further alleged that:
[o]n July 15, 1984, Johnson presented to the BCH Emergency room with a two-week history of nasal and chest congestion, plus fever for the past few days. When he presented to the emergency room, he had obvious nuchal rigidity and was admitted under the care and treatment of Dr. Blackwood.
Sherman was ultimately diagnosed with acute bacterial meningitis and was subsequently transferred to the University Medical Center in Jackson for further care and treatment. Due to complications caused by the meningitis, Sherman now suffers from severe mental retardation and neurological damage.
¶ 5. In February and April of 1991, Sherman’s attorney requested a copy of Sherman’s medical records from Bolivar Medical Center and Family Medical Clinic.[2] Medical records were also requested from the University Medical Center. Shortly thereafter, Sherman’s attorney forwarded the records obtained from the University Medical Center to an expert for review. The expert opined that Sherman’s treatment did not substantially deviate from the standard of care.
¶ 6. On October 8, 1992, Lubertha petitioned the Bolivar County Chancery Court for letters of guardianship and for the authorization to file suit and employ an attorney on Sherman’s behalf. That same day, a judge entered an order granting Lubertha’s request. No further action was taken until May 1998, when Sherman’s attorney again attempted to get an expert to render an opinion regarding Sherman’s medical care arid treatment. This expert similarly failed to render a favorable opinion after reviewing Sherman’s records.
¶ 7. On January 28, 2002, Sherman filed the present action against the defendants by and through his mother Lubertha. After filing suit, Sherman’s attorney again submitted Sherman’s medical records to three additional experts before obtaining a favorable opinion from Dr. Robert Cullen in February 2003. Dr. Cullen opined that Sherman’s neurological devastation was caused by Dr. Blackwood and Dr. Toler’s medical negligence. Additional facts will be related during our discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

Standard of Review

¶ 8. Dr. Blackwood and his codefendants filed summary judgment motions based *1056 upon the statute of limitation’s defense.[3] Summary judgment is proper “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). “All that is required of an opposing party to survive a motion for summary judgment is to establish a genuine issue of material fact by the means available under the rule.” Lowery v. Guar. Bank and Trust Co., 592 So.2d 79, 81 (Miss.1991) (citing Galloway v. Travelers Ins. Co., 515 So.2d 678, 682 (Miss.1987)). “In determining whether the entry oí summary judgment [is] appropriate, [the appellate court] reviews the judgment de novo, making its own determination on the motion, separate and apart from that of the trial court.” Lowery, 592 So.2d at 81. “The evidentiary matters are viewed in the light most favorable to the non-moving party.” Id. “If after this examination, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is affirmed, but if after examining the evidentiary matters there is a genuine issue of material fact, the grant of summary judgment is reversed.” Lowery, 592 So.2d at 81(citing Newell v. Hinton, 556 So.2d 1037, 1041 (Miss.1990)).

Sherman’s Discovery of the Injury

¶ 9. The crux of Sherman’s argument on appeal is that the trial judge erred in concluding that the statute of limitations had run on his medical negligence claim. Sherman contends that because he did not discover that he had an actionable injury until February 2003, when first informed of the defendants’ negligence by Dr. Cullen, the statute of limitations did not begin to run until that particular time. He further contends that the trial court invaded the province of the jury when it determined that he had failed to exercise reasonable diligence in discovering his claim, as this was a question of fact for the jury. Sherman also argues, for the first time on appeal, that the defendants fraudulently concealed his medical negligence claim by removing and destroying pertinent parts of his medical records.
¶ 10. Mississippi Code Annotated section 15-1-36 (Supp.1984), the applicable statute of limitations in existence at the time of Sherman’s treatment, states in pertinent part as follows:
no claim in tort may be brought against a licensed physician, osteopath, dentist, hospital, institution for the aged or infirm, nurse, pharmacist, podiatrist, optometrist or chiropractor for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or negligence shall or with reasonable diligence might have been first known or discovered.
¶ 11. “The two-year statute of limitations does not commence running until the patient discovers or should have discovered that he has a cause of action.” Smith v. Sanders, 485 So.2d 1051, 1052 (Miss.1986) (citing Pittman v. Hodges, 462 So.2d 330, 332-34 (Miss.1984)). “The focus is on the time that the patient discovers, or should have discovered by the exercise of reasonable diligence, that he probably had an actionable injury.” Id. “The operative time is when the patient can reasonably be held to have knowledge of the injury itself, *1057 the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner.” Id.
¶ 12. We note from the outset that the trial court properly recognized that the statute of limitations begins to run against a ward or minor when that ward or minor has a guardian or conservator who is authorized to employ attorneys and bring an action on behalf of the minor. See USF & G Co. v. Conservatorship of Melson, 809 So.2d 647, 654(¶ 27) (Miss.2002).
¶ 13. Here, the record reflects that Lu-bertha received authorization to pursue a medical negligence claim on Sherman’s behalf in October 1992. Lubertha, however, waited until January 28, 2002, almost ten years after receiving authorization, and approximately eighteen years after Sherman’s treatment, to file a cause of action on his behalf. As a result, we find that Sherman’s suit clearly exceeded the time period provided for in the applicable statute of limitations. We further find that Sherman has failed to present evidence that he could not have discovered, with the exercise of reasonable diligence, the alleged relationship between his injury and the treatment provided by the defendants. Because the record fails to reveal a genuine issue of material fact regarding Sherman’s exercise of due diligence, the trial judge properly dismissed his claim.
¶ 14. Although Sherman claims that he did not discover the defendants’ negligence until informed by Dr. Cullen in 2003, we find that the record is clear that Sherman recognized as early as 1992 the existence of a relationship between the defendants’ alleged negligence and his injury. First, Lubertha specifically alleged in her petitions for guardianship and authorization to file suit that she was under the belief that the defendants had provided negligent medical care, treatment, and a diagnosis which had resulted in serious and permanent bodily injuries to Sherman. Additionally, the order entered by the trial court authorizing the suit’s filing and the employment of an attorney further stated that:
On or about July 15, 1984, Sherman Yunta Johnson contracted bacterial meningitis and sought medical care, treatment and diagnosis from certain medical doctors and providers in Cleveland, Bolivar County, Mississippi. Upon information and belief, these medical doctors and providers failed to provide proper medical care, treatment and diagnosis which resulted in serious and permanent bodily injuries to the aforesaid minor, Sherman Yunta Johnson, due to the lack of appropriate diagnosis and treatment.
Petitioner is advised and therefore avers on information and belief that there is probable cause to believe that the medical providers and doctors breached certain duties owed to the minor, Sherman Vunta Johnson.
¶ 15. As previously noted, Sherman was put on notice as early as 1992 that he had a potential claim against the defendants, therefore he should have exercised reasonable diligence in discovering that claim. While Sherman may not have known with absolute certainty the alleged causative relationship between his condition and the treatment provided by the defendants until advised by Dr. Cullen, we are not persuaded that his late knowledge of the specifics of his injuries is sufficient to toll the running of the statute of limitations. Moreover, there is no evidence of any actions taken by Sherman’s guardian between 1991 and 1998 to procure an expert opinion regarding the alleged medical negligence claim. We fail to discern how this inaction can be properly described as “due diligence.”
*1058 ¶ 16. Sherman, citing Sarris v. Smith, 782 So.2d 721 (Miss.2001), also argues that the failure of the Bolivar Medical Center to produce his medical records operated to toll the statute of limitations. The fallacy in this argument is that Dr. Cullen’s opinion was not based on records that were later discovered. Bolivar Medical Center tendered all the records it had or could obtain and advised Sherman that some records could not be produced because of a microfilming error. Bolivar Medical Center was never able to produce those records, yet Dr. Cullen was able to give an opinion without the benefit of the records. If Dr. Cullen could give a favorable opinion in 2003, we see no reason why he could not have done the same in 1992 or 1993.
¶ 17. Finally, Sherman contends that the defendants fraudulently concealed his medical negligence claim. However, the record reveals and the defendants properly advance that Sherman failed to raise this argument at the trial level. As a result, he is procedurally barred from now raising the issue for the first time on appeal. See Crowe v. Smith, 603 So.2d 301, 305 (Miss.1992).
¶ 18. Nevertheless, despite Sherman’s failure to raise this issue at the trial level, we still find that his argument lacks merit for two reasons. First, Sherman failed to show some act or conduct of an affirmative nature by the defendants that prevented the discovery of his claim, and second, he failed to show that he had exercised due diligence in discovering the claim. See Robinson v. Cobb, 763 So.2d 883, 887(¶ 19) (Miss.2000). Accordingly, we find that the trial judge did not err in concluding that Sherman’s suit was barred by the applicable two-year statute of limitations.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, AND ISHEE, JJ., CONCUR. BARNES, J. NOT PARTICIPATING.

. Several of the original defendants were dismissed from the suit before the summary judgment hearing.

. Bolivar Medical Center alleged that portions of Sherman’s medical records were unavailable due to a microfilming error. The hospital, however, obtained partial copies of the records from Dr. Blackwood and forwarded them to Sherman’s attorney.

. The trial judge noted that Dr. Toler's motion, which was styled “Supplemental Motion to Dismiss, or in the Alternative, Motion for Summary Judgment,” was converted to a summary judgment motion because matters outside of the pleadings were considered by the court.